UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

TAI DUC HOANG

CRIMINAL ACTION

NO. 23-5-JWD-EWD

**RULING AND ORDER**

This matter comes before the Court on the *Motion to Dismiss Count Two of the Indictment* ("*Motion to Dismiss*") (Doc. 27) filed by Defendant Tai Duc Hoang. The Government then filed *United States' Memorandum in Opposition to Defendant's Motion to Dismiss* (Doc. 29). The Court stayed this matter pending the Supreme Court's decision in *United States v. Rahimi*, 602 U.S. 680 (2024), (Doc. 34), and pending the Fifth Circuit's decision in *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), (Docs. 37, 38). Following the decisions in those cases, the Government filed a second *United States Memorandum in Opposition to Defendant's Motion to Dismiss* ("*Gov. Opposition*") (Doc. 47). Defendant then filed his *Response to the United States' Memorandum in Opposition to Defendant's Motion to Dismiss* ("*Def. Response*") (Doc. 52). The Government then filed the *United States' Reply to Defendant's Response to United States' Memorandum in Opposition to Defendant's Motion to Dismiss* ("*Gov. Reply*") (Doc. 53). The Court then ordered the parties to brief the Court on the impact of its rulings in *United States v. Davis*, No. 22-93, 2025 WL 964439 (M.D. La. Mar. 31, 2025) (deGravelles, J.), and *United States v. Crocklem*, No. 24-37, 2025 WL 1261610 (M.D. La. Mar. 28, 2025) (deGravelles, J.). Defendant accordingly filed his *Brief Regarding Impact of Court's Ruling in United States v. Davis & United States v. Crocklem* ("*Def. Brief*") (Doc. 55), and the Government filed *United States' Response to Defendant's Brief Regarding Impact of Court's Rulings in United States v. Davis & United States v. Crocklem* ("*Gov. Brief*") (Doc. 56).

1

Oral argument was scheduled for August 20, 2025, but the Court finds that it is no longer necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties, and it is prepared to rule. For the following reasons, Defendant's *Motion to Dismiss* is denied.

I.   **RELEVANT BACKGROUND AND PARTIES' ARGUMENTS**

Defendant was indicted on February 9, 2023, for one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) and one count of possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 1 at 1–2.) Relevant to Count Two, Defendant has a number of prior felony convictions. (Doc. 7 at 3–6.) Defendant pled guilty in 2008 to simple burglary in the 19th Judicial District Court, (Doc. 7 at 3; Doc. 47-2 at 2), pled guilty in 2009 to possession of a firearm by a convicted felon in the Middle District of Louisiana, (Doc. 7 at 4–5; Doc. 47-3 at 1), pled guilty in 2014 to possession with intent to distribute marijuana in the 19th Judicial District, (Doc. 7 at 5; Doc. 47-6 at 1; Doc. 47-7 at 1), pled guilty in 2021 to four counts of possession with intent to distribute methamphetamine, heroin, marijuana, and MDMA, respectively (Doc. 7 at 6; Doc. 47-9 at 1–6).

On August 15, 2023, Defendant moved to dismiss Count Two, arguing that Title 18 U.S.C. § 922(g)(1) violated the Second Amendment as interpreted by the Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). (Doc. 27-1 at 1.) Defendant argued that 18 U.S.C. § 922(g)(1) was unconstitutional both facially and as applied to him. (*Id.* at 2–6.) The Court then ordered the parties to file briefing on whether the Court should stay the case pending a decision in *Rahimi*. (Doc. 31.) Following briefing in which Defendant requested a stay, (Doc. 32), and the Government argued that a stay was unnecessary, (Doc. 33), the Court stayed the matter pending a decision in *Rahimi*. (Doc. 34.)

2

Following the Supreme Court's decision in *Rahimi* on June 21, 2024, Defendant filed *Defendant's Brief Regarding Defendant's Motion to Count Two of the Indictment* (Doc. 35) ("*Def. Brief re MTD*"), requesting that the Court continue the stay pending the Fifth Circuit's decision in *Diaz*. (Doc. 35 at 3.) He argued that the Supreme Court's decision in *Rahimi* "does not definitively answer the questions raised in defendant's Motion to Dismiss relative to 18 U.S.C. § 922(g)(1)[]" because the Supreme Court "held that a person 'found by a court to pose a credible threat to the physical safety of another may be *temporarily* disarmed consistent with the Second Amendment.'" (*Id.* at 2 (quoting *Rahimi*, 602 U.S. at 702) (emphasis added in *Def. Brief re MTD*).) Defendant argued that the law was still "in flux" and that the Fifth Circuit had yet to rule on the constitutionality of § 922(g)(1). (*Id.* at 3.) He urged the court to continue its stay pending the Fifth Circuit's decision in *Diaz*. (*Id.*)

The Government again argued that a stay was unnecessary, asserting that the Supreme Court's decision in *Rahimi* had clarified Second Amendment law both on its face and as applied to Defendant's case. (Doc. 36 at 1–4.) The Court granted the stay pending the Fifth Circuit's decision in *Diaz* and ordered that, following the Fifth Circuit's decision in *Diaz*, the parties submit additional briefing on the *Motion to Dismiss*. (Doc. 37.)

On September 18, 2024, the Fifth Circuit held in *Diaz* that § 922(g)(1) is constitutional both facially and as applied to Diaz. *Diaz*, 116 F.4th at 472. The Government then filed *Gov. Opposition*, arguing that *Bruen*, *Rahimi*, *Diaz*, and *United States v. Bullock*, 123 F.4th 183 (5th Cir. 2024), all support the constitutionality of § 922(g)(1). (Doc. 47 at 4–6.) The Government argues that the Fifth Circuit wrongly decided the first step of the *Bruen* analysis in *Diaz* and that "the pre-existing right to keep and bear arms codified in the Second Amendment's text is not available to felons." (Doc. 47 at 7.) Next, it argues that the Fifth Circuit rightly decided the second step of the

3

*Bruen* analysis in *Diaz*, such that Defendant's facial challenge is foreclosed and his as-applied challenge is meritless. (*Id.*) The Government contends that "founding-era governments punished analogous crimes" to burglary and drug trafficking, for which Defendant has prior convictions, "with death and estate forfeiture," making "the disarmament of defendant . . . permissible." (*Id.*) In addition, the Government argues that the "disarmament of [D]efendant was permissible while he was on parole." (*Id.*)

The Government points to a historical tradition of disarming those convicted of burglary, arguing that at common law, burglary was a felony punishable by death. (*Id.* at 8 (citing 4 William Blackstone, *Commentaries on the Laws of England* 94–98, 228 (1769); Henry John Stephen, *Summary of the Criminal Law* 94 (1840)).) In addition, the Government asserts, multiple colonies and states enacted laws treating burglary as a capital offense in the founding era. (*Id.* (citing Laws of the State of New York Passed at the First Meeting of the 11th Session of the Legislature at 664-666 (1788); An Act Against Burglary, 1785 Mass. Acts & Laws January Session 242; An Act for the Punishment of Burglary and Robbery, 1783 Conn. Acts & Laws, October Session 633; An Act Against Murder, &c. § 5, 1702-1745 N.H. Laws, Province Period, Volume 2, at 313-315).) The Government further points to the Fifth Circuit's finding in *United States v. Quiroz*, 125 F.4th 713 (5th Cir. 2025), stating that burglary was considered a capital offense in seven states at the time of the founding. (Doc. 47 at 8–9 (citing *Quiroz*, 125 F.4th at 724).)

The Government then addresses Defendant's prior drug trafficking convictions, arguing that "[f]ounding-era governments punished harshly the possession of and trafficking in contraband." (*Id.* at 9.) It points to a Virginia law punishing the "receipt of a stolen horse with death[,]" (*id.* (citing 6 William Waller Hening, *The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature* 130 (1819) (1748 law)); a New York law

4

punishing the receipt of "a dead body with knowledge that it had been unlawfully disinterred with up to five years in state prison[,]" (*id.* (citing Ellis Lewis, *An Abridgment of the Criminal Law of the United States* 226 (1847) (1819 law)); a Massachusetts law punishing "the printing of "obscene books" with "up to five years in the state prison[,]" (*id.* (citing Lewis, *supra*, at 480); a federal law punishing the theft of mail with death, (*id.* (citing An Act to Establish the Post-Office and Post Roads Within the United States, § 17, 1 Stat. 232, 237 (1792)); and state and federal laws punishing "counterfeiting and forgery of public securities with death or estate forfeiture[,]" (*id.* at 9–10 (citing An Act for the Punishment of Certain Crimes Against the United States, § 14, 1 Stat. 112, 115 (1790); 2 Laws of the State of New York Passed at the Sessions of the Legislature (1785-1788) at 260-61 (1886) (1786 law); 9 Hening, *supra*, at 302 (1821) (1777 law))). The Government argues these laws indicate a "historical tradition of severely punishing those who were convicted of possessing or dealing in contraband[,]" which it contends "supports the disarmament of those convicted of trafficking in illicit drugs." (*Id.* at 10.)

The Government acknowledges that these laws do not prohibit drugs, asserting that "drug abuse was not a problem at the time of the founding." (*Id.* (citing *United States v. Connelly*, 117 F.4th 269, 278 (5th Cir. 2024)).) It argues that MDMA, one of the drugs Defendant was previously convicted of possessing, did not exist prior to the twentieth century. (*Id.* at 10–11.) The Government argues that the Supreme Court in *Rahimi* permitted more extensive regulations than those that existed at the time of the founding. (*Id.* at 11–12.) It urges the Court not to seek overly strictly analogous founding-era laws. (*Id.* at 12.) Instead, the Government argues, various district courts within the Fifth Circuit have found that the founding-era contraband analogues permit the disarmament of convicted drug traffickers. (*Id.* at 13 (collecting cases).)

5

The Government further argues that there is "a historical tradition of disarming those who are dangerous." (*Id.* at 14.) It limits this to those who pose a threat of physical violence. (*Id.* (citing *Rahimi*, 602 U.S. at 698).) While the Government acknowledges that none of Defendant's prior convictions were for a violent offense, they argue that "burglary is inherently dangerous," (*id.* at 15), and that it "poses 'inherent potential for harm to persons[,]'" (*id.* (quoting *Taylor v. United States*, 495 U.S. 575, 588 (1990)).) The Government argues that burglary is considered a "violent felony" for the purposes of the Armed Career Criminal Act. (*Id.* at 16 (citing 18 U.S.C. § 924(e)(2)(B)(ii)).) It likewise argues that Defendant's prior drug trafficking offenses are dangerous to the public. (*Id.* (collecting cases).) The Government notes that on two prior occasions, Defendant "possessed a firearm with drugs[,]" which it argues magnifies "[t]he danger posed by [D]efendant[.]" (*Id.* at 16–17.) The Government argues that disarmament "based on judicial findings that [Defendant] committed burglary and drug trafficking—felonies that pose an inherent danger of violence" are analogous to surety and going armed laws. (*Id.* at 18 (citing *Rahimi*, 602 U.S. at 699).)

Finally, the Government argues that an individual on parole is still serving a criminal sentence and can therefore be disarmed. (*Id.* at 18–19.)

In *Def. Response*, Defendant argues that "[h]is prior convictions of simple burglary and possession with intent to distribute narcotics were not crimes that historically would have resulted in a death sentence or other severe punishment." (Doc. 52 at 4.) Defendant notes that the Fifth Circuit has held that felons are among those protected by the Second Amendment, and that the plain language of the Second Amendment protects his actions in possessing a handgun. (*Id.* at 4–5.) As a result, he contends that he has satisfied the first element of the *Bruen* test, and that under the second test, the Court must consider whether his felony convictions would "rise[] to the same

6

level as a felony at the Founding," which requires that the Government "establish that there is an analogous historical crime that had a historical tradition of severe punishment, i.e. the death penalty." (*Id.* at 5.) Defendant argues that the Government has only placed at issue his "prior convictions for Simple Burglary and possession with intent to distribute narcotics[.]" (*Id.*)

With respect to simple burglary, Defendant argues that "not all burglaries are the same[,]" and that simple burglary as defined in Louisiana state law "is simply not the same as a burglary at the Founding." (*Id.*) Defendant argues that simple burglary does not require entry into an inhabited dwelling and is not listed as a crime of violence in Louisiana. (*Id.* at 6.) He asserts that it is "the least invasive or risky of all Louisiana burglaries and a crime which Louisiana recognizes is not a crime of violence." (*Id.* at 7.) As a result, Defendant argues that it is not analogous to the historical common-law burglary at the time of the Founding, which required entry into "a mansion-house" or associated building at night-time using force with the intent to commit a felony. (*Id.* at 7–8 (citing 4 William Blackstone, Commentaries on the Laws of England, 224 (1769)).) Defendant argues that because simple burglary in Louisiana is categorically broader than common-law burglary, the generic common law burglary is not analogous. (*Id.* at 9–11.) Defendant further contends that the United States does not have a historical tradition of punishing burglary, whether under common-law or under specific statutes, with death. (*Id.* at 11.) He points to founding era laws in Connecticut, Louisiana, Pennsylvania, Virginia, Connecticut, New Jersey, Maryland, and Georgia, asserting that none of them made burglary a capital offense absent aggravating factors, and none made estate forfeiture a penalty for burglary. (*Id.* at 11–13.) Defendant argues that first-time offenders convicted of burglary were not punished with death under English common law. (*Id.* at 13.)

7

Proceeding to Defendant's prior narcotics conviction, Defendant argues that the Government cannot show analogous historical laws to support disarming Defendant for the distribution of narcotics. (*Id.* at 13.) Defendant asserts that two of the three laws the Government cites were not "aimed at prohibiting the selling of contraband." (*Id.* at 14.) In addition, he argues, none of the cited laws "are relevantly similar to modern drug trafficking laws." (*Id.*) Defendant points to the test articulated by the Fifth Circuit in *United States v. Connelly*, requiring that "relevantly similar" laws share both "a common 'why' and 'how'" with the predicate at issue. (*Id.* (quoting *Connelly*, 117 F.4th 269, 274).) He argues that none of the laws the Government cites meet these elements and are therefore not relevantly similar. (*Id.* at 14–15.) In addition, Defendant argues that the Government has not provided a sufficient number of historical analogues. (*Id.* at 15.) He contends that the Government's reasoning goes against the Supreme Court's logic and cautions in *Bruen* and urges the Court to reject the Government's arguments. (*Id.* at 16–17.)

Defendant further argues that the Government's assertion that it has the historical authority to disarm those who are dangerous or not responsible has been rejected by the Supreme Court as overly vague. (*Id.* at 17 (citing *Rahimi*, 602 U.S. at 698.) He distinguishes between the disarmament of those who have been found to pose a credible threat of physical danger that was permitted in *Rahimi* and the broad disarmament of those previously convicted of any felony under § 922(g)(1). (*Id.* at 17–18.) Defendant argues that the Government incorrectly relies on an out-of-circuit case rather than *Diaz*, which he contends did not conduct any analysis of a defendant's dangerousness or its relevance to disarmament. (*Id.* at 18–20.) With respect to the in-circuit case the Government cites to, *United States v. Bullock*, Defendant argues that the Fifth Circuit relied on historical analogues to manslaughter, which was the predicate offense at issue, rather than any analysis of the defendant's general dangerousness. (*Id.* at 20–21 (citing *Bullock*, 123 F.4th 183 (5th

8

Cir. 2024)).) Furthermore, Defendant argues, his simple burglary conviction is not considered a crime of violence under Louisiana law or the Armed Career Criminal Act. (*Id.* at 21.) Defendant contends that the Government conflates other conduct, some of which was dismissed, in arguing for his dangerousness. (*Id.* at 21–22.) Defendant asserts that his prior convictions do not support any finding of dangerousness. (*Id.* at 22.)

Defendant further argues that "*Diaz* forecloses the government's argument that Mr. Hoang's parole status justifies his § 922(g)(1) conviction." (*Id.* at 4.) He asserts that if he was on parole for an offense that was not a felony, the Court may not consider it regardless of his release status. (*Id.* at 22.) Defendant argues that "a § 922(g)(1) charge must rely on 'previous history,' not concurrent conduct." (*Id.* at 23. (citing *Diaz*, 116 F.4th at 467).) Defendant argues that the Government again relies on out-of-circuit cases, which, Defendant asserts, posed the wrong question and reached the wrong conclusion. (*Id.*) Defendant notes Fifth Circuit precedents permitting the disarmament of an individual on parole but argues that these are fact-specific. (*Id.* at 23–25.) Defendant argues that *United States v. Contreras* only considered whether 18 U.S.C. § 922(g)(3) was a proper predicate for § 922(g)(1) while the defendant was on supervised release for the § 922(g)(3) release, finding that it was because it pertained to "repeat users of controlled substances." (*Id.* at 24 (quoting *United States v. Contreras*, 125 F.4th 725, 732 (5th Cir. 2025) (emphasis omitted)).) Defendant similarly argues that in *United States v. Giglio*, the Fifth Circuit found that § 922(g)(3) was a proper predicate. (*Id.* at 24–25 (citing *United States v. Giglio*, 126 F.4th 1039, 1045 (5th Cir. 2025).) Because both of these related to § 922(g)(3), Defendant argues that they are not applicable to him. (*Id.* at 25.) Defendant argues that *Giglio*, as well as the out-of-circuit precedents it relies upon, are "in significant tension with Supreme Court guidance on as-applied challenges[]" because they consider conduct outside of that which the challenged statute

9

actually prohibits. (*Id.*) Instead, Defendant argues, the Court should rely only on *Diaz* and *Contreras* "as the controlling precedent under the Fifth Circuit's rule of orderliness." (*Id.* at n.139.) Defendant argues that "*Diaz* and *Contreras* foreclose the government's argument that Mr. Hoang's parole status justifies his § 922(g)(1) prosecution." (*Id.* at 25–26.)

In *Gov. Reply*, the Government concedes that the Fifth Circuit in *Contreras* "did not decide whether service of a felony sentence *alone* would render application of Section 922(g)(1) constitutional under the Second Amendment." (Doc. 53 at 1–2.) However, the Government asserts that this open question was decided in *Giglio*, where the Fifth Circuit "held, without qualification, that 'the government may disarm those who continue to serve sentences for felony convictions.'" (*Id.* at 2 (citing *Giglio*, 126 F.4th at 1044).) The Government contends that the Fifth Circuit "specifically rejected" Defendant's argument "that, in conducting its as-applied analysis, the Court should look only to [Defendant's] prohibiting conviction." (*Id.*) Instead, the Government argues, the Fifth Circuit "explained that, by taking into account defendant's continued service of his underlying felony sentence, the Court was not 'look[ing] beyond' the predicate felony conviction—it was, in fact, looking *at* the felony conviction." (*Id.* (quoting *Giglio*, 126 F.4th at 1046).) As a result, the Government argues, Defendant's argument with respect to his parole is foreclosed. (*Id.*)

With respect to his prior conviction for burglary, the Government points to *United States v. Quiroz*, in which the Fifth Circuit found that "'burglary was a capital offense in seven states at the founding[.]'" (*Id.* at 3 (quoting *Quiroz*, 125 F.4th 713, 724 (5th Cir. 2025)).) The Government argues that while burglary may not have been punished with death in all states at the time of the founding "does not mean that there was not a recognizable tradition in other states of treating burglary as a capital offense." (*Id.*) In addition, it argues that the laws cited by Defendant "represent

10

a wave of reform[.]" (*Id.* at 4.) The Government argues that this wave of reform does not impact the "pre-ratification history of punishing burglary with death." (*Id.*) In addition, the Government maintains that Defendant's predicate offense of simple burglary is sufficiently analogous to common-law burglary. (*Id.* at 5–6.)

The Government likewise argues that there are sufficient analogues to drug trafficking from the time of the founding, contending that Defendant "is demanding too close a similarity[.]" (*Id.* at 6.) It again points to the contraband statutes previously cited and argues that "Section 922(g)(1) has been upheld numerous times as applied to drug possessors and traffickers." (*Id.* at 7.)

Finally, the Government argues that while "*Rahimi* rejected the idea that individuals can be disarmed if they are not 'responsible,' it did not reject the idea that individuals can be disarmed if they pose a danger to society." (*Id.* at 8 (citing *Rahimi*, 602 U.S. at 698).) Instead, it points to the Supreme Court's conclusion that those who pose credible threats of physical harm may be disarmed. (*Id.* (citing *Rahimi*, 602 U.S. at 700).) The Government also argues that there is no requirement for a prior judicial finding of danger. (*Id.*) Regardless, the Government contends, there are judicial findings in this case that the Defendant "committed burglary and trafficked in illegal drugs—both inherently dangerous crimes." (*Id.* at 9.) The Government further argues that the Court may look beyond Defendant's predicate convictions to consider actual conduct. (*Id.* (citing *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024)).) The Government asserts that it has accurately represented Defendant's convictions, and that his offenses are inherently dangerous regardless of statutory definitions. (*Id.* at 9–10.) Consequently, the Government urges the Court to deny Defendant's *Motion to Dismiss*. (*Id.* at 10.)

Following the Court's order to file briefing discussing the impact of its rulings in *United States v. Davis* and *United States v. Crocklem*, Defendant filed *Def. Brief*. (Doc. 55.) Defendant

11

disagrees with the Court's holding in *Davis* that founding era laws punishing forgery, mail theft, and receipt of stolen horses are relevantly similar predicates to modern drug trafficking laws. (*Id.* at 3.) Instead, Defendant argues that the "why" of these laws is not relevantly similar. (*Id.* at 3–4.) Defendant contends that although founding era legislators were aware of problems posed by narcotics, they did not regulate the distribution, use, or sale of such substances. (*Id.* at 4.) As a result, Defendant argues that there are no sufficient founding era analogues for these predicate offenses. (*Id.* at 5.)

Defendant also continues to assert that simple burglary is distinguishable from common law burglary, disagreeing with the Court's holding in *Crocklem*. (*Id.*)

In *Gov. Brief*, the Government counters that the Court's holdings in *Davis* and *Crocklem* foreclose Defendant's challenge. (Doc. 56.) The Government asserts that the Court's holding in *Davis*, "that the felon-in-possession statute can be constitutionally applied to defendants with felony drug convictions, including drug possession convictions[,]" applies to Defendant. (*Id.* at 2 (citing *Davis*, 2025 WL 964439 at *7).) Likewise, the Government argues that "[t]he Court expressly rejected the defendant's 'main argument' that 'Louisiana's simple burglary is not analogous to common law burglary.'" (*Id.* (citing *Crocklem*, 2025 WL 1261610 at *7).) In addition, the Government points to the Court's denial of the motion to dismiss in *United States v. Quinn*, holding "that Section 922(g)(1) can be constitutionally applied to a defendant who possessed a firearm while on parole for a felony offense." (*Id.* (citing *United States v. Quinn*, No. CR 24-3-JWD-RLB, 2025 WL 1243816 (M.D. La. Apr. 22, 2025)).) As a result, the Government argues that the Court should deny Defendant's *Motion to Dismiss*. (*Id.* at 4.)

## II. LEGAL STANDARDS

### A. The Second Amendment Generally

The felon-in-possession statute makes it a crime for:

> any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year[,] . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

Because § 922(g) affects the Second Amendment right to "keep and bear Arms[,]" the Court must conduct a Second Amendment analysis to determine the constitutionality of its application. *Diaz*, 116 F.4th at 462.

The Supreme Court established the Second Amendment standard in *Bruen*:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

597 U.S. at 24 (citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 (1961)). "[T]his historical inquiry that courts must conduct will often involve reasoning by analogy . . . ." *Id.* at 28. The question of "whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Id.* at 28–29 (citing C. Sunstein, *On Analogical Reasoning*, 106 Harv. L. Rev. 741, 773 (1993)). This involves finding "a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 30.

In *United States v. Rahimi*, the Supreme Court further clarified the "historical analogue" requirement. 602 U.S. at 691. "These precedents were not meant to suggest a law trapped in amber." *Id.* "[T]he appropriate analysis involves considering whether the challenged regulation is

13

consistent with the principles that underpin our regulatory tradition." *Id.* at 692. The Court found that 18 U.S.C. 922(g)(8) was constitutional on its face and as applied to Rahimi, because our country's "firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at 690.

The Fifth Circuit applied this framework to § 922(g)(1) in *Diaz*. 116 F.4th 458. *Diaz* considered the defendant's felon status in the second step of the *Bruen* analysis, collapsing the inquiry "into one question: whether the law is consistent with our Nation's history of firearm regulation." *Id.* at 467 (citing *Rahimi*, 602 U.S. at 692). The Fifth Circuit held "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1) . . . ." *Id.* Thus, the government bears the burden to demonstrate that the application of § 922(g)(1) is "'consistent with the Nation's historical tradition of firearm regulation.'" *Id.* (quoting *Bruen*, 597 U.S. at 24).

To determine if a historical law is relevantly similar, the Fifth Circuit has said to focus "on the *why* and *how* [and] ascertain whether the challenged regulation 'impose[s] a comparable burden on the right of armed self-defense' to that imposed by a historically recognized regulation." *United States v. Quiroz*, 125 F.4th 713, 718 (5th Cir. 2025) (quoting *Bruen*, 597 U.S. at 29). In *Diaz*, the Fifth Circuit held that § 922(g)(1)'s justification (the "why") was "relevantly similar" to the examples of punishing felonies with death: "to deter violence and lawlessness." *Diaz*, 116 F.4th at 469. The Fifth Circuit also reasoned that the method by which § 922(g)(1) reaches this goal (the "how")—permanent disarmament—was consistent with historical methods because if felonies were historically punished with death, "'then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible.'" *Id.* (quoting *Rahimi*, 602 U.S. at 699).

The holding in *Diaz* was not a blanket statement that all felonies may serve as a constitutional predicate offense to § 922(g)(1), but only those that "fit[] within this tradition of

14

serious and permanent punishment[,]" such as death or permanent estate forfeiture. *Id.* at 470. *Diaz* addressed a predicate conviction of theft, finding that there was a history and tradition of severe punishment for theft by looking to the historic laws of three states: Massachusetts, New York, and Virginia. *Id.* at 468. Further, the Fifth Circuit found that the historical "going armed" and forfeiture of weapons laws, which "punished 'those who had menaced others with firearms[,]'" *id.* at 470–71 (citing *Rahimi*, 602 U.S. at 697), "provide[d] for permanent arms forfeiture as a penalty." *Id.* at 471 (citing Acts and Resolves, Public and Private, of the Province of the Massachusetts Bay 53). "Imposing permanent disarmament as a punishment is also within our Nation's history and tradition." *Id.* The Fifth Circuit held that "'[t]aken together,' laws authorizing severe punishments for thievery and permanent disarmament in other cases establish that our tradition of firearm regulation supports the application of § 922(g)(1) to Diaz." *Id.* (citing *Rahimi*, 602 U.S. at 698).

Likewise, in *United States v. Bullock*, the Fifth Circuit rejected a § 922(g)(1) challenge by a defendant with prior convictions for aggravated assault and manslaughter. 123 F.4th 183, 184–85 (5th Cir. 2024). "From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." *Id.* at 185 (quoting *Rahimi*, 602 U.S. at 693). "The historical record demonstrates 'that legislatures have the power to prohibit dangerous people from possessing guns.'" *Id.* (quoting *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting)); *see also Folajtar v. Att'y Gen.*, 980 F.3d 897, 912 (3d Cir. 2020) (Bibas, J., dissenting) ("The historical touchstone is danger[.]")). The Fifth Circuit reasoned that "[t]here can be no doubt that manslaughter and aggravated assault in this context constitute dangerous and violent crimes." *Id.* (citation omitted). The appellate court looked to the "historical tradition of severely punishing individuals convicted of homicide, a prototypical common law felony considered a 'very dangerous offense[, ]'" *id.* (citation omitted), and to the fact that the

15

defendant's conduct was "'relevantly similar' to, and arguably more dangerous than, the 'prototypical affray [which] involved fighting in public,' the precursor to the 'going armed' laws punishable by arms forfeiture[,]" *id.* (quoting *Rahimi*, 602 U.S. at 697).

More recently, in *Quiroz*, the Fifth Circuit addressed 18 U.S.C. § 922(n), possession of a firearm while under indictment for a felony. 125 F.4th at 715. Quiroz was under indictment for burglary and bail jumping. *Id.* The Fifth Circuit analyzed the history of burglary as a capital offense, finding a tradition because seven states at the founding deemed burglary a capital offense. *Id.* at 724. It further said that there need not be unanimity between the states to show history and tradition. *Id.* at 725.

Ultimately, neither the Supreme Court nor the Fifth Circuit has set a minimum number of historic laws required to establish a history and tradition of serious and permanent punishment. In *Diaz*, the Fifth Circuit found a history and tradition looking at the laws of only three states. 116 F.4th at 468. In *Quiroz*, again, it was seven. 125 F.4th at 724. Thus, it appears that there is no brightline rule for determining how many states' laws are needed to establish a tradition, but *Diaz* and *Quiroz* provide guidance.

### III.  DISCUSSION

#### A.  Burglary

The Fifth Circuit has repeatedly found that burglary is a sufficient predicate for § 922(g)(1). *See Quiroz*, 125 F.4th 713; *United States v. Brown*, 2025 WL 1393870 (5th Cir. May 14, 2025); *United States v. Shnur*, 132 F.4th 863 (5th Cir. 2025). Admittedly, these cases do not address the specific issue Defendant raises of common law burglary versus Louisiana's simple burglary. However, the Court did address this question in *Crocklem* less than three months ago. In *Crocklem*, the Court held that "common law burglary is a sufficient historical analogue to simple burglary."

*Crocklem*, 2025 WL 1261610 at *9. The Court found that both the "how" and "why" of common law burglary and Louisiana's simple burglary are relevantly similar. *Id.* at *8–9. Defendant has not presented the Court with any compelling reasons to depart from this very recent holding. Nor does he dispute that he was previously convicted for simple burglary. (*See* Doc. 7 at 3.) Instead, Defendant merely argues that he believes simple burglary to be broader and therefore distinguishable from common law burglary as a predicate. (Doc. 52 at 5–11.) The Court disagrees. Relying on *Crocklem* and Fifth Circuit precedent, the Court continues to hold that common law burglary is a sufficient historical analogue to simple burglary and that Defendant's prior conviction for simple burglary is a constitutional predicate for § 922(g)(1). Defendant's *Motion to Dismiss* is denied on this ground.

### B. Drug Convictions

With respect to Defendant's prior drug convictions, the Government argues that the Court should apply as historic analogues founding era laws that prohibit "the possession of and trafficking in contraband." (Doc. 47 at 9.) Specifically, it points to a Virginia law punishing the "receipt of a stolen horse with death[,]" (*id.* (citing 6 Hening, *supra*, at 130 (1748 law)); a New York law punishing the receipt of "a dead body with knowledge that it had been unlawfully disinterred with up to five years in state prison[,]" (*id.* (citing Lewis, *supra*, at 226 (1819 law))); a Massachusetts law punishing the printing of "obscene books" with "up to five years in the state prison[,]" (*id.* (citing Lewis, *supra*, at 480 ); a federal law punishing the theft of mail with death, (*id.* (citing An Act to Establish the Post-Office and Post Roads Within the United States, § 17, 1 Stat. 232, 237 (1792)); and state and federal laws punishing "counterfeiting and forgery of public securities with death or estate forfeiture[,]" (*id.* at 9–10 (citing An Act for the Punishment of Certain Crimes Against the United States, § 14, 1 Stat. 112, 115 (1790); 2 Laws of the State of

17

New York Passed at the Sessions of the Legislature (1785-1788) at 260-61 (1886) (1786 law); 9 Hening, *supra*, at 302 (1777 law))).

The Fifth Circuit addressed these exact arguments recently in *United States v. Kimble*, stating that to find such felonies "analogous to Founding-era felonies punishable by death or estate forfeiture such as the knowing receipt of a stolen horse or the forgery of public securities . . . . stretches the analogical reasoning prescribed by *Bruen* too far." *United States v. Kimble*, No. 23-50874, 2025 WL 1793832 at *3 (5th Cir. June 30, 2025). However, the Fifth Circuit did accept the Government's argument in *Kimble* that disarmament was appropriate "because drug trafficking is an intrinsically dangerous felony, and legislatures can disarm those who pose a threat to the safety of others." *Id.* In keeping with this precedent, the Court finds that § 922(g)(1) is constitutional as applied to Defendant, given his "predicate felonies for drug-trafficking offenses because of the intrinsic violence of the drug trade." *Id.*

### C. Parole

In *United States v. Giglio*, the Fifth Circuit held that "the government may disarm those who continue to serve sentences for felony convictions." 126 F.4th at 1044 (citing *United States v. Contreras*, 125 F.4th 725 (5th Cir. 2025)). The Fifth Circuit employed the two-step *Bruen* analysis to first ask whether the plain text of the Second Amendment covered the defendant's conduct and, upon finding that it did, to proceed to the second step of examining historical analogues for the modern regulation. *Id.* at 1042. The Fifth Circuit cited to the Third Circuit's analysis in *United States v. Moore*, which "looked to founding-era forfeiture laws, which 'temporarily disarmed citizens who had committed a wide range of crimes.'" *Id.* at 1043 (quoting *Moore*, 111 F.4th 266, 267–68 (3d Cir. 2024) *Moore* examined founding-era laws in Pennsylvania, Massachusetts, Virginia, and Kentucky, finding that "[t]hose convicted under each 'could be required to forfeit

18

their weapons and were prevented from reacquiring arms until they had finished serving their sentences.'" *Id.* (quoting *Moore*, 111 F.4th at 271). Because "this 'forfeiture of property and limitation on rights occurred while the convict was serving out his sentence, not only while he was physically in prison,'" the Third Circuit found that the "'historical practice of disarming a convict during his sentence' justified the modern practice of disarming individuals 'serving their sentences on supervised release.'" *Id.* at 1043–44 (quoting *Moore*, 111 F.4th at 271–72).

In addition, the Fifth Circuit in *Giglio* looked at the Sixth Circuit's opinion in *United States v. Goins*, which held that "the government today could justifiably 'disarm those on parole, probation, or supervised release.'" *Id.* at 1044 (quoting *Goins*, 118 F.4th 794, 801–02 (6th Cir. 2024)) (cleaned up). The Sixth Circuit looked at "the statutes identified in *Moore* and added examples from three other states." *Id.* (citing *Goins*, 118 F.4th at 802 (collecting statutes from Pennsylvania, Maryland, Massachusetts, North Carolina, Vermont, and Virginia)). The Fifth Circuit found that these cases "establish a historical tradition wherein 'convicts could be required to forfeit their weapons and were prevented from reacquiring arms until they had finished serving their sentences.'" *Id.* (quoting *Moore*, 111 F.4th at 271) (cleaned up).

The appellate court found that this historical traditional aligned with the "why" "of disarming felons who are still serving out sentences[]"—deterrence, protecting the broader public, and rehabilitation. *Id.* (citing *Moore*, 111 F.4th at 269–70; *Contreras*, 125 F.4th at 732–33; *Diaz*, 116 F.4th at 469). It likewise found that the historical tradition aligned with the "how"—the Fifth Circuit noted that these historical laws "required forfeiture of *all* chattels" which "justif[ies] the narrower practice of prohibiting possession of *some* (*viz.*, firearms)." *Id.* (citing *Diaz*, 116 F.4th at 469–70; *cf. id.* at 469; *Rahimi*, 602 U.S. at 699).

19

Finally, the Fifth Circuit noted "the unremarkable proposition that those subject to criminal sentences do not enjoy the full panoply of rights guaranteed by our Constitution." *Id.* at 1045.

In *Quinn*, the Court looked to *Giglio* to find that "disarmament while on parole for a previous felony conviction is in line with 'our historical tradition of disarming individuals subject to ongoing criminal punishment[.]'" 2025 WL 1243816 at *8 (quoting *Giglio*, 126 F.4th at 1047). As of April 26, 2021, Defendant was released on parole for his convictions in state court for four counts of possession with intent to distribute. (Doc. 47-1; Doc. 7 at 6.) He was to remain on parole until July 2, 2024. (Doc. 47-1 at 1.) Defendant was indicted for the instant offense on February 9, 2023, over a year before his parole was to end. (Doc. 1 at 1–2.) Absent good reason to deviate from its prior holding, the Court continues to hold that § 922(g)(1) is constitutional as applied to defendants on parole at the time of their § 922(g)(1) arrests and as such, is constitutional as applied to Defendant here.

### IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss Count Two of the Indictment* (Doc. 27) filed by Defendant Tai Duc Hoang is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>July 15, 2025</u>.

        **JUDGE JOHN W. deGRAVELLES**
        **UNITED STATES DISTRICT COURT**
        **MIDDLE DISTRICT OF LOUISIANA**